UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20053-CR-ALTMAN

**UNITED STATES OF AMERICA**,

    Plaintiff,
v.

**TAVARES MCCRAY**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on the Defendant's Motion to Suppress Narcotics, Currency, and Firearm ("Motion") [ECF No. 22], filed on April 15, 2019. On April 29, 2019, the United States of America (the "Government") filed its Response ("Response") [ECF No. 27]. The Court held a hearing on the Motion on May 1, 2019, at which the Government introduced an exhibit and the parties made their oral arguments. The Court has carefully considered the parties' written submissions, the statements made at oral argument, and the applicable law. For the reasons stated in open court and in this Order, the Defendant's Motion is **DENIED**.

### I.  BACKGROUND

The Indictment charges the Defendant with four violations of federal law: 1) possession with intent to distribute a controlled substance within 1,000 feet of a school; 2) maintenance of a drug-involved premises within 1,000 feet of a school; 3) possession of a firearm and ammunition by a convicted felon; and 4) possession of a firearm in furtherance of a drug trafficking crime. [ECF No. 1]. On June 12, 2018, following an investigation by the Miami-Dade Police Department ("MDPD") into possible street-level sales of narcotics at 14260 Northwest 22nd Place—the Defendant's residence—Detective Brandon Ashe ("Det. Ashe") executed an Affidavit in Support

of a Search Warrant ("Affidavit"). That same day, Judge John Schlesinger of the Eleventh Judicial Circuit of Florida reviewed and signed the Search Warrant ("Warrant") [ECF No. 27-1]. The following day, June 13, 2018, officers of the MDPD executed the Warrant and found the evidence the Defendant now seeks to suppress.[1]

## II.     DISCUSSION

The Defendant argues that the Affidavit did not establish probable cause to search his home, that the information in the Affidavit was stale and thus could not support a finding of probable cause, and that the good-faith exception did not otherwise permit the search.

The Affidavit establishing probable cause in this case, which the United States introduced as Exhibit 1 at the suppression hearing, was composed by the MDPD after the officers' repeated observations of street-level narcotics sales and in conjunction with a confidential informant ("CI") who made controlled purchases of narcotics at a dwelling later determined to be the Defendant's residence. [ECF No. 27-1, at 3]. On two separate occasions, 27 days apart—first on May 16, 2018 and then again on June 12, 2018—the CI was directed to make cash purchases of narcotics at the Defendant's home. *Id.* At 4-5. The procedure the MDPD employed for controlling the purchases is detailed in the Affidavit, but, as relevant here, it involved a multi-step process whereby the CI was: 1) searched for money and contraband ahead of the purchase; 2) handed $50 in government funds along with a directive to purchase narcotics from the Defendant's residence; 3) monitored by uninterrupted visual surveillance before, during, and after the purchase; and 4) re-searched after the purchase and subsequent transmittal to Det. Ashe of a yellow baggie containing approximately

---

[1] Specifically, the officers seized thirteen baggies containing 169.1 grams of cocaine inside of a PVC pipe; six baggies totaling 33.6 grams of crack cocaine inside of a false-bottomed paint can; a loaded handgun; and other drug paraphernalia, including a digital scale and glass beakers. The officers also recovered $2,424 in cash from the Defendant's pockets. The currency was found in smaller denominations, which the United States suggests is "consistent with the sale of narcotics." Resp. 2.

one gram of suspected cocaine. *Id*. The CI also said that an unidentified black male had sold him the cocaine he had purchased. *Id*.

Probable cause to support a warrant exists "when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (citations and internal quotation marks omitted). The *Kapordelis* Court explained that, to effectuate a search of a home, there must be a "reasonable basis" for concluding that a defendant keeps evidence of his crimes in his home—a basis which, the court suggested, should be accompanied by the "common-sense realization" that justifies search warrants of homes:

> The justification for allowing a search of a person's residence when that person is suspected of criminal activity is the common-sense realization that one tends to conceal fruits and instrumentalities of a crime in a place to which easy access may be had and in which privacy is nevertheless maintained. In normal situations, few places are more convenient than one's residence for use in planning criminal activities and hiding fruits of a crime.

*Kapordelis*, 569 F.3d 1310 (quoting *United States v. Green*, 634 F.2d 222, 226 (5th Cir. Unit B 1981)). As in all facial challenges to a search warrant's probable cause, the Court's review is here limited to assessing whether the issuing judge had a "substantial basis for concluding that a search would uncover evidence of wrongdoing." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (alterations, citations, and internal quotation marks omitted).

In this case, the Affidavit offers just such a "substantial basis" for the officers' conclusion that evidence of narcotics sales would be found in the Defendant's home. The Affidavit states that Det. Ashe, a nine-year veteran of the police department with significant training and expertise in narcotics investigations (including of street-level sales) in the area surrounding the Defendant's home, personally observed activities at the Defendant's residence that he felt were consistent with

street-level sales of narcotics.[2] [ECF No. 27-1 at 3]. Following these observations, Det. Ashe and another MDPD Detective met with a CI to coordinate two separate controlled purchases of narcotics over the course of a 27-day period. *Id.* The purchases, as detailed above, were carefully tailored (and visually surveilled) to corroborate the CI's reliability. *Id.* These controlled buys (the second of which occurred on the very same day the Warrant issued), together with Det. Ashe's personal observations, are more than sufficient to establish probable cause. *See United States v. Johnson*, 444 F. App'x 424, 426 (11th Cir. 2011) (affirming the denial of a motion to suppress a search warrant premised, as here, on "two controlled buys, conducted according to a set of procedures designed to ensure their reliability").

Having concluded that the Affidavit articulated more than sufficient probable cause to justify the issuance of the Warrant, the Court will briefly address the Defendant's remaining arguments—first, that the Affidavit failed to establish the CI's "veracity" and "basis of knowledge"; second, that the information contained in the Affidavit was "stale" by the time the Warrant was issued; and third, that the so-called "good faith exception" should not apply to this Warrant because Judge Schlesinger "abandoned his judicial role" and acted as little more than "a rubber stamp." Mot. 3-8.

First, the Eleventh Circuit has said that a detective's "direct observation at the house of two controlled buys, conducted according to a set of procedures designed to ensure their reliability" not only establishes probable cause, but also provid[es] sufficient independent corroboration of the veracity of the CI." *Johnson*, 444 F. App'x at 426. By this standard, the procedures Det. Ashe

---

[2] Given his experience investigating precisely the kinds of crimes at issue here, Det. Ashe's personal observations alone arguably provided sufficient probable cause for the issuance of a warrant. *See United States v. Joseph*, 709 F.3d 1082, 1100 (11th Cir. 2013) ("[P]olice officer's expectation, based on prior experience and the specific circumstances of the alleged crime, that evidence is likely to be found in a suspect's residence, satisfies probable cause.") (citation and internal quotation marks omitted).

employed before and during each controlled purchase—patting down the CI to make sure that he was not already in possession of narcotics, handing him the $50, visually surveilling him as he walked towards the drug purchase, watching the drug transfer take place, following him back to an agreed-upon location, and then patting him down again to ensure that the baggie the CI had given him was the only contraband in the CI's possession—was more than sufficient to ensure the CI's reliability. Notably, the Defendant cites to no case for the opposite proposition.

Second, as to staleness, the Defendant concedes that "there is no particular rule or time limit for when information becomes stale." Mot. 4 (quoting *United States v. Bervaldi*, 226 F.3d 1256, 1264 (11th Cir. 2000)). Again, the Defendant has cited no case—and the Court has found none—to substantiate his view that the probable cause admittedly gleaned from a controlled purchase conducted on the very same day the Warrant issued somehow became stale in just a few hours.[3] And, although the May 16th purchase would not, on its own, have been "fresh" enough to withstand a "staleness" challenge, its description in the Affidavit suggests that the Defendant's residence was the site of continuous, rather than isolated, narcotics sales—an inference that further supported the officers' reasonable belief that narcotics (and narcotics-related paraphernalia ) would be found in the home. *United States v. Williams*, 177 F. App'x 914, 921 (11th Cir. 2006) (noting that, because "selling drugs requires a dealer to establish a supply source and develop a customer base or reputation . . . the use of a house for the sale of drugs will continue over some period of time . . . .").

---

[3] The Defendant also implies that the Warrant lacked probable cause because the controlled purchases were too small to justify the search of a citizen's home. Mot. 6. At oral argument, the Defendant conceded that he has found no case to justify his position that the probable cause inquiry turns on the amount of drugs seized during a controlled buy. And that makes sense. Whether the officers had purchased one gram or one kilogram of cocaine from the home, they would have had probable cause to believe that drugs (or drug-related paraphernalia) would be found in the home. That is all the Fourth Amendment requires.

Finally, even if the Warrant did not contain sufficient probable cause, the Court finds that the officers were entitled to rely upon the Warrant's issuance in deciding to conduct the search. *See United States v. Leon*, 468 U.S. 897 (1984). While the Defendant correctly points to four scenarios under which the good-faith exception articulated in *Leon* would not apply, he provides absolutely no evidence to justify his view that, in this case, Judge Schlesinger "abandoned his judicial role" and acted as little more than "a rubber stamp." Mot. 8. Moreover, the only Supreme Court case in which this "rubber stamp" exception to *Leon* was found to apply, *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319 (1979), bears absolutely no relation to the facts of this case. In *Lo-Ji Sales*, the magistrate judge signed a mostly blank warrant that lacked any specificity as to what evidence would be seized and then personally accompanied and directed the officers' activities at the site of the search. *Id.* at 326-327. In this case, the Warrant, as mentioned, was not blank; it specifically described the place to be searched and the kinds of evidence to be seized; and its detailed allegations supported Judge Schlesinger's reasonable belief that narcotics would be found in the home. More than that, Judge Schlesinger neither accompanied the officers to the scene nor directed their search of the home.

### III.   CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion **[ECF No. 22]** is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 5th day of May, 2019.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record